UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 21-CIV-24301-WILLIAMS

KEITH F. BELL, PH.D.,

    Plaintiff,

vs.

GERALD ALEXANDER,

    Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on the Motion to Dismiss (DE 14) the First Amended Complaint (the "Motion") filed by Defendant Gerald Alexander ("Defendant" or "Mr. Alexander"), to which Plaintiff Keith F. Bell, Ph.D. ("Plaintiff" or "Dr. Bell") filed a Response in Opposition (DE 19) (the "Response"). Defendant did not file a reply to Plaintiff's Response, and it is past the time to do so. For the reasons set forth below, Defendant's Motion (DE 14) is **GRANTED IN PART AND DENIED IN PART**.

**I.  BACKGROUND**

Dr. Bell is a sports psychologist and performance consultant who has worked with hundreds of athletes and sports teams. (DE 9 at 2.) In 1982, Plaintiff published his book *Winning Isn't Normal*, of which he is the sole author and owner. (*Id.* at 3.) Plaintiff owns the copyright to the entire book *Winning Isn't Normal*, under registration number TX 002-672-644, as well as the separate copyright to the "WIN Passage," under registration number TX 008-503-571. (*Id.* at 3–4.) Dr. Bell promotes, distributes, and sells his book on websites he owns and via other online retailers. (*Id.* at 4.) Plaintiff also provides notice

of the copyrights on his websites and offers information about how to obtain permission to use his book and the separate WIN Passage. (*Id.* at 4–5.)

Dr. Bell alleges that on May 13, 2020, Mr. Alexander, a coach for the Miami Dolphins football team, posted a representation of the WIN Passage without authorization on his Twitter page. (DE 9 at 5.) Mr. Alexander had, at the time, at least 18,000 Twitter followers. (*Id.*) Plaintiff alleges the tweeted image was almost identical to the WIN Passage, with only minor modifications of text and formatting. (*Id.*) The tweet was captioned, "Watching interviews of MJ on #TheLastDance reminds me of this piece. If you don't know. You probably never won anything." (*Id.* at 13.) The post was retweeted by Defendant's followers and to at least 66,433 of their followers. (*Id.* at 5.) Plaintiff sent two cease and desist letters to Defendant that allegedly went unanswered. (*Id.*) In Count I of the First Amended Complaint, Plaintiff asserts that by tweeting the WIN Passage without authorization, Defendant engaged in copyright infringement in violation of 17 U.S. § 1202 (b)(2).[1] (*Id.* at 6–7.) In response, Defendant moves to dismiss Count I for failure to state a claim. (DE 14 at 5.)

## II.   LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a court assumes as true all well-pleaded factual allegations to determine whether they plausibly give rise to an entitlement for relief.

---

[1] Plaintiff also alleged a Digital Millennium Copyright Act ("DMCA") Copyright Management Information ("CMI") claim—Count II—in the First Amended Complaint, which Defendant also moved to dismiss. (DE 9 at 13; DE 14 at 14.) However, in his Response, Plaintiff voluntarily dismissed the DMCA CMI claim. Accordingly, the DMCA CMI claim is dismissed without prejudice, and the Court does not reach the merits of the claim. (DE 19 at 13.)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff makes a facially plausible claim when they plead factual content from which the court can reasonably infer a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Id*.

Although the Court resolves all doubts and inferences in a plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that he is entitled to relief. *Twombly*, 550 U.S. at 556. A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. *Id.* at 557. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon v. King & Spalding*, 476 U.S. 69, 73 (1984)). In deciding a motion to dismiss, review is generally limited to the four corners of the complaint. *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007) (citing *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

### III. DISCUSSION

In Count I of the First Amended Complaint, Plaintiff alleges that Defendant engaged in copyright infringement when he tweeted the WIN Passage without permission. (DE 9 at 6.) Defendant moves to dismiss Count I for several reasons. First, Defendant asserts that Plaintiff's First Amended Complaint fails to satisfy the basic pleading requirements of Rule 12(b)(6). (*Id.*) Second, Defendant asserts a fair use defense. (*Id.* at 7.) Finally, Defendant asserts an innocent infringement defense. (*Id.* at 12.) The Court discusses each of Mr. Alexander's arguments in turn.

#### A. Copyright Infringement

A plaintiff must allege two factors to establish a copyright infringement claim: (1) ownership of a valid copyright; and (2) the copying of constituent elements of the work that are original. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994); *LaTele TV, C.A. v. Telemundo Commc'ns Grp., LLC*, 2013 WL 1296314, at *5 (S.D. Fla. Mar. 27, 2013). To satisfy the first prong, a plaintiff must prove that the work is original and that the plaintiff complied with applicable statutory formalities. See *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). Once the plaintiff produces the copyright certificate, the defendant has the burden to demonstrate why the claim of copyright is invalid. *Id.* (citing *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990)). To satisfy the second prong, the plaintiff must show that the infringer "actually used the copyrighted material . . . ." *Bateman*, 79 F.3d at 1541 (quoting *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994)).

Defendant argues that under 37 C.F.R. § 202.0(b)(11), the WIN Passage cannot be separately registered as a copyright and therefore cannot serve as a basis for a copyright infringement action. (DE 14 at 5.) The Court disagrees. Regardless of the validity of the separate copyright for the WIN Passage, Plaintiff has sufficiently pled that the entire book is copyrighted. (DE 9 at 9.) In a similar case brought by the same Plaintiff, *Bell v. Llano Indep. Sch. Dist. & Aaron Nuckles*, 2020 WL 5370591, at *2 (W.D. Tex. Feb. 13, 2020), a defendant questioned the validity of the separate WIN Passage copyright certificate. In *Bell v. Llano Independent School District*, the court considered the copyright for the entire *Winning Isn't Normal* book sufficient to overcome a motion to dismiss the claim of copyright infringement. *Id.* Here, too, by including both copyright certificates and the Tweet, Plaintiff has pled a right to relief sufficient to defeat a motion to dismiss. (DE 9 at 9, 11, 13.) Thus, the Court denies Defendant's Motion as to Count I.

### B. Defendant's Fair Use Affirmative Defense

Defendant also asserts a "fair use" defense in response to Count I. (DE 14 at 8–12.) The fair use doctrine is considered an affirmative defense and is generally not considered ripe for adjudication at the motion to dismiss stage. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010); *Katz v. Chevaldina*, 900 F. Supp. 2d 1314, 1315 (S.D. Fla. 2012) ("It is easy to see why a fair use defense typically cannot be analyzed upon a Rule12(b)(6) motion. 'Fair use is a mixed question of law and fact.'" (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)). In this Circuit, unless a plaintiff adequately sets forth a *prima facie* case involving fair use in the complaint, a fair use defense is not deemed appropriate on a motion to dismiss. *Katz*, 900 F. Supp. 2d at 1315–16; *see e.g.*, *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067,

1069 (11th Cir. 1984) (holding that a complaint may not be dismissed on an affirmative defense, unless "the defense clearly appears on the face of the complaint"); *Kobi Karp Arch. & Interior Design, Inc. v. O'Donnell Dannwolf & Partners Archs., Inc.*, 2020 WL 4287005, at *2 (S.D. Fla. July 27, 2020) (denying a motion to dismiss predicated on a fair use defense because the court could not clearly analyze the fair use factors from "the face of the complaint") (citation omitted). Although Defendant cites to and relies on *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), in which the district court analyzed a fair use defense on a motion to dismiss, *Brownmark* is not binding and has not been relied upon for a motion to dismiss a copyright infringement case in this Circuit. *Katz*, 900 F. Supp. 2d at 1316 ("*Brownmark* . . . does not control in this Court"). Moreover, *Brownmark* is factually inapposite: the court in *Brownmark* held that the district court had all the facts needed at the motion to dismiss stage to determine whether a fair use defense applied to a copyright infringement claim involving a single episode of a television series. *See Brownmark*, 682 F.3d at 690.

Upon review of the First Amended Complaint, the Court does not find that a fair use defense has been identified for full consideration at this stage. *See Katz*, 900 F. Supp. 2d at 1315–16. Further, Defendant has cited to no cases in this Circuit holding that analysis of the fair use defense is appropriate in deciding a motion to dismiss. Defendant does cite to another case brought by Plaintiff with similar claims in which the court considered fair use, *Bell v. Magna Times, LLC*, 2019 WL 1896579, at *2 (D. Utah Apr. 29, 2019). But that case is unpersuasive here, because Plaintiff correctly points out that fair use is generally disfavored in the Eleventh Circuit at the motion to dismiss stage. (DE 19 at 6–7); s*ee Bell*, 2019 WL 1896579 at *2, *5 (noting that Plaintiff cited "to no case law for

his assertion that the fair use doctrine can never be considered in a motion to dismiss" before granting a motion to dismiss for use of the WIN Passage in a news article).

As is clear from the discussion below, full consideration of the fair use defense is inappropriate at this time and would benefit from a more developed record.[2] Nevertheless, the Court will briefly analyze the fair use defense as presented by Defendant. Pursuant to 17 U.S.C. § 107, a court considers the following four (4) factors for a fair use defense: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. Each of the four factors must have a holistic, qualitative, and individual analysis. *See Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1302 (11th Cir. 2018). All factors are weighed together in light of the purpose of the subject copyright. *Id.* at 1300.

   1. **The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.**

As to the first fair use factor, Defendant admits that he is not in a non-profit industry. (DE 14 at 9.) The question therefore is whether Defendant's Twitter page is commercial in nature. Plaintiff alleges that Defendant uses his Twitter page "commercially to further his reputation and promote his personal business." (DE 9 at 5.) Defendant argues there are no other allegations that Defendant used his Twitter for any commercial or monetary gain. (DE 14 at 9.) Further, Defendant alleges that a detailed review of Defendant's Twitter makes no reference to his employment as a Miami Dolphins coach or any other

---

[2] Defendant may raise the fair use defense again at later stage in the proceeding.

commercial venture, and that his Twitter page is purely personal. (*Id.*) Although it appears on this record that the Tweet's purpose was for commentary and motivation, not commercial purposes, whether or not Defendant sought financial gain via his Twitter account is unclear at this time. Therefore, the first factor is inconclusive.

### 2. The nature of the copyrighted work.

Second, courts consider the nature of the copyrighted work and whether the work is factual or creative. Defendant argues that if the publication is widespread, the use is more likely to be deemed fair use. *See Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013). Further, Defendant asserts that very creative works are more highly protected, as are unpublished works. (DE 14 at 9) (citing *Peteski Prod., Inc. v. Rothman*, 264 F. Supp. 3d 731, 740 (E.D. Tex. 2017).) At this stage, there is a clear disagreement about whether Plaintiff's work is informational or creative. Defendant concedes that the WIN Passage is "at least minimally creative." (DE 14 at 10.) However, it is uncertain whether *Winning Isn't Normal* and/or the WIN Passage are widely published. Plaintiff states that he "continues to promote, distribute, offer for sale, and sell numerous copies" of *Winning Isn't Normal*, including online via domains he owns, and on Amazon.com and via other outlets. (DE 9 at 4.) Thus, since Plaintiff's work seems to be minimally creative, and is distributed at least through Plaintiff's own efforts online, it appears that the second factor may weigh toward finding *Winning Isn't Normal* and/or the WIN Passage a minimally creative work that is widely available. *See Bell*, 326 F. Supp. 3d at 927 (holding that since the work was widely published and widely available on the Internet, including on Plaintiff's own website, the second factor favored fair use).

3. **The amount and substantiality of the portion used in relation to the copyrighted work as a whole.**

The third factor takes into account the amount and substantiality of the portion of the copyright work used. The portion in question is one (1) page of a seventy-two (72) page book. (DE 14 at 1.) Plaintiff asserts that although Defendant only tweeted a single page of the book, the WIN Passage is the "heart" of Plaintiff's work. *See L.A. News Serv. v. Tullo*, 973 F.2d 791, 798 (9th Cir. 1992) (holding that the doctrine of fair use did not protect the defendant from liability because the copying of even a small portion of a work may exceed fair use if the work is considered the "heart" of the work). Notably, even an "insubstantial portion" of a work may be considered the "heart" of work. *See Harper*, 471 U.S. at 564–65 (holding that despite the copyrighted words being an "insubstantial portion" of unpublished memoirs, they were considered the most "interesting," "moving," and "powerful," passages and were therefore the "heart of the book"); *see also Stoneworks, Inc. v. Empire Marble & Granite, Inc.*, 1998 WL 998962, at *7 (S.D. Fla. Nov. 19, 1998) ("Copying of a small, but significant portion of an overall work is sufficient to constitute infringement."). The idea that the WIN Passage is the "heart" of Plaintiff's work can be seen through its appearance on numerous products, such as posters and t-shirts sold through various retailers. (DE 9 at 4.) Additionally, if the Court considers the separate copyright for the WIN Passage, then the Tweet contains the entirety of the copyrighted work. (*Id.* at 11.) Accordingly, the third factor weighs in the Plaintiff's favor at this time.

4. **The effect of the use upon the potential market for or value of the copyrighted work.**

The final factor in the fair use analysis is the effect of the use on the potential market value of the copyrighted work. Plaintiff has not made any showing of loss of sales

or negative impact on his business since Defendant's tweet. However, because fair use is an affirmative defense, it is not Plaintiff's burden to show the market damage, but instead, Defendant's burden to establish a fair use basis. (DE 19 at 11.) While Defendant asserts Plaintiff has not pled a specific monetary number of damages, Plaintiff does allege that the retweeted copyrighted work caused *some* damages. (DE 9 at 5.) Therefore, at this stage, the fourth factor favors neither Defendant nor Plaintiff. Accordingly, the fair use analysis is inconclusive at this stage in the litigation and would be better considered at a later time upon a more developed record.

### C. Defendant's Innocent Infringement Defense

Defendant's last argument is that, in the alternative, he was an innocent infringer. (DE 14 at 12.) An innocent infringer is one who was not aware and had no reason to believe that their acts constituted a copyright infringement. *See Maverick Recording Co. v. Harper*, 598 F.3d 193, 198 (5th Cir. 2010). However, the innocent infringer defense is not a true defense, but rather a limitation on damages applicable only if the infringer can prove that they were unaware that the works were copyrighted. *See Malibu Media, LLC v. Fitzpatrick*, 2013 WL 5674711, at *4 (S.D. Fla. Oct. 17, 2013); *see also Munro v. Fairchild Tropical Botanic Garden, Inc.*, 2020 WL 7865415, at *6 (S.D. Fla. Nov. 4, 2020). If an infringer can prove that they were unaware of the work's copyrighted status, a court may reduce the award of statutory damages. 17 U.S.C. § 504(c)(2). While it is plausible that Defendant was an innocent infringer, this would not absolve him from full liability. Rather, it could potentially lower the amount of damages Defendant owes, when asserted at the damages stage of litigation. Consequently, Defendant's Motion cannot be granted on this basis at this time.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (DE 14) is granted in part and denied in part. Plaintiff's Complaint as to Count II is dismissed without prejudice.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss (DE 14) is **GRANTED IN PART AND DENIED IN PART**
2. Count II of the First Amended Complaint (DE 9 at 6–7) is **DISMISSED WITHOUT PREJUDICE.**

**DONE AND ORDERED** in Chambers in Miami, Florida, this 3rd day of August, 2022.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

cc: Keith F. Bell, Ph.D.
3101 Mistyglen Circle
Austin, TX 78746
Email: drkeithbell@gmail.com
*PRO SE*